**Paul GUARINO, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16790.**

Court of Criminal Appeals of Oklahoma.

Nov. 15, 1971.

Berry & Berry, Oklahoma County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge.

Paul Guarino, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Robbery by Force. His punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Cecil Hillerman testified that he was an employee of B. C. Clark's Jewelry Store located on May Avenue in Oklahoma City, Oklahoma. He testified that on the afternoon of December 22, 1970, he was asked by one of the other employees to show a carat-and-a-half diamond to the defendant. He went to a drawer and obtained the diamond wallet containing approximately $100,000 worth of diamonds. He returned to the show case where the defendant was standing. He placed the wallet on the counter, while keeping his hand on it, and reached down to open a drawer under the counter, wherein he felt the wallet leaving his hand. Defendant jumped back from the counter and ran from the store carrying the diamond wallet. Hillerman and several other persons present took pursuit of the defendant. They chased him for approximately one block, when the defendant ran into a residential backyard which was enclosed by a cyclone fence. Hillerman attempted to talk to the defendant, asking him to give the diamond wallet back to him. Some of the people with Hillerman attempted to restrain him in the backyard, whereupon the defendant sprayed mace upon them. Defendant ran from the backyard and sprayed mace on Hillerman. The defendant continued running along the street with Hillerman and the other ones still in hot pursuit. The defendant tripped and dropped the diamond wallet, which Hillerman retrieved. The defendant ran through several residential yards, jumped fences, and was finally "cornered" near a house, at which time the police arrived.

Connie Clarkson testified that she was employed at the B. C. Clark's Jewelry Store and first waited on the defendant, who asked to see a carat-and-a-half diamond. She asked Mr. Hillerman to help the defendant. Mr. Hillerman obtained the diamond wallet and walked back around to put the wallet on a drawer. The defendant grabbed the wallet, and he and Hillerman ran from the store.

Bruce Logan testified that on the afternoon in question, he was a customer in the jewelry store. He heard a lady yell and observed people running out the door. He joined in the chase and then, attempting to stop the defendant, was sprayed in the face with some type substance.

Bob Gingrich testified that he was an employee at the jewelry store and was working in the back on a watch band when he heard a commotion in front. He observed the defendant running from the store with the diamond wallet with Hillerman in pursuit. He joined in the pursuit and helped chase the defendant into the fenced backyard. He and Hillerman tried to get the diamonds away from the defendant, whereupon the defendant took something out of his pocket that "squirted like a spray can." Defendant ran out of the yard and across

the street into another yard, whereupon Gingrich again tried to retrieve the diamonds and was sprayed in the eyes with the liquid. Defendant ran again, and tripped, dropping the diamond wallet. The defendant got up and continued to run.

Officer Arnold testified that after receiving information over the radio, he proceeded to the general location and observed the defendant starting into a backyard on 48th Street. He dismounted from the police unit, drew his pistol, advised the defendant to drop the can of mace and placed him under arrest.

The defendant testified that he was twenty-one years old and lived in Kansas City, that he was married, that his wife was expecting a baby, and he was honorably discharged from the United States Army, having served in Viet Nam, where he received a Purple Heart and a Bronze Star. On the afternoon in question, he went to the B. C. Clark's Jewelry Store and asked to see a one-and-a-half-carat diamond. Hillerman went to a drawer to get a few down; he picked up a box, and brought it to the counter and set it on the counter. He turned to a clerk, whereupon the defendant picked up the diamond wallet and ran out the door. Various people chased him and he sprayed three or four people with the mace. He testified that he had no intention of purchasing a diamond and that he had planned to take the diamonds prior to entering the store.

The defendant asserts three propositions, only one of which we deem to be of sufficient merit to warrant discussion in this opinion. Defendant contends that the trial court erred in overruling his demurrer to the evidence at the Preliminary Hearing and at the trial for the reason that the evidence clearly established the crime of Grand Larceny, not Robbery by Force. We would agree with the defendant's contention that the mere snatching of the diamond wallet from Hillerman's hand was not robbery; however, the defendant's later actions in the using of the mace to retain possession of the wallet does constitute the offense of Robbery. Title 21 O.S.A. § 792 states:

"To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery."

The Record reflects that the defendant testified on cross examination:

"Q. In other words, he was trying to get the diamonds away from you. He came to get the diamonds, didn't he after he told you to give them back, is that right?

"A. Along with a few other words.

"Q. And, he said, 'Give me the diamonds back,' and you refused and he started toward you, isn't that right?

"A. Yes.

"Q. And, when he was trying to get them from you, you used this to keep him from getting them, didn't you?

"A. No, it was indirectly, I guess.

"Q. Well, you sprayed him to keep him from getting them or getting you, is that right?

"A. Yes.

"Q. Then, you ran again, is that right?

"A. Yes.

In Hood v. State, 80 Okl.Cr. 175, 157 P.2d 918, we stated:

"There was no stealth in the taking, but it was permitted through fear of bodily harm. When the prosecuting witness Gregory pursued the woman who had taken his money, and caught her and attempted to recover his money, she struck at him three times with a knife held in her hand, forcing him to desist in his efforts to recover his money. Certainly this state of facts was sufficient to come within the provisions of the statute defining robbery. The 'force and fear' necessary to constitute robbery may be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. 21 O.S.1941 § 792, above quoted. It is not necessary that both force and fear be

employed. People v. Borra, 123 Cal.App. 482, 11 P.2d 403."

In conclusion, we observe the Record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BRETT, J., concurs.